IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK A. SHAW and<br>DANIEL M. OQUENDO<br><br>      Plaintiffs,<br><br>v.<br><br>ALPHA AIR HEATING & AIR<br>CONDITIONING LLC and DEREK<br>GRANGER<br><br>      Defendants. | CIVIL NO. 2:22-CV-3953 |

## COMPLAINT

Plaintiffs Mark A. Shaw and Daniel M. Oquendo assert their causes of action against defendants Alpha Air Heating & Air Conditioning LLC and Derek Granger as follows:

### THE PARTIES

1. Co-plaintiff is Mark A. Shaw, a person of age and majority, who is currently domiciled in Louisiana and residing in St. Charles Parish.

2. Co-plaintiff is Daniel M. Oquendo, a person of age and majority, who is currently domiciled in Louisiana and residing in Orleans Parish.

3. Defendant is Alpha Air Heating & Air Conditioning LLC ("ALPHA AIR"), a domestic limited liability company organized in Abita Springs, St. Tammany Parish, Louisiana, actively doing business within Louisiana, with its principal place of business in Jefferson Parish.

4. Upon information and belief, ALPHA AIR has a single member, Derek Granger, who is domiciled in Louisiana and, upon information and belief, resides in Abita Springs, St. Tammany Parish, Louisiana.

1

## JURISDICTION AND VENUE

5.     The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 206 (the Fair Labor Standards Act minimum wage provisions); and § 207 (FLSA overtime wage provision) as more particularly set-out herein.

6.     The Court has supplemental, subject-matter jurisdiction over the co-plaintiffs' Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to their federal law claims that they form part of the same case or controversy as more particularly set-out herein.

7.     The Court has personal jurisdiction over ALPHA AIR because it is a domestic limited liability company organized in Abita Springs, St. Tammany Parish, with its principal place of business in Metairie, Jefferson Parish, and its sole member is domiciled in Louisiana. ALPHA AIR is therefore a Louisiana citizen.

8.     Alternatively, the Court has personal jurisdiction over ALPHA AIR because it regularly transacts business in Louisiana; regularly employs or has employed Louisiana citizens; committed the specific unlawful acts in Louisiana that injured the co-plaintiffs in this case; and committed the unlawful acts in Louisiana otherwise giving rise to the causes of action in this case.  Thus, ALPHA AIR has established minimum specific contacts with Louisiana, arising from the facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

9.     The Court has jurisdiction over Derek Granger because he is a Louisiana citizen and upon information and belief is physically present within Louisiana at the time this lawsuit was filed.

10.    Venue for co-plaintiffs' FLSA and state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties contracted for co-plaintiffs' employment and engaged in

the FLSA and state-law wage violations alleged in this matter in this judicial district (specifically, St. Tammany Parish and Jefferson Parishes), and co-plaintiffs' resulting harm was suffered in this judicial district (same).

## FACTS

**A.     Defendants Misclassified the Co-Plaintiffs as Independent Contractors when They Were Non-Exempt Employees**

11.    Co-plaintiff Mark A. Shaw is a 31-year-old man living in Luling, Louisiana.

12.    Co-plaintiff Daniel "Danny" M. Oquendo is a 42-year-old man living in New Orleans, Louisiana.

13.    Both Mr. Shaw and Mr. Oquendo depend on the wages they earn from their manual labor to support themselves and their families.

14.    ALPHA AIR is the business of selling, installing, and servicing residential heating, air conditioning, and ventilation (HVAC) systems in Southeast Louisiana.

15.    Upon information and belief, since its organization, ALPHA AIR's sole member has been Derek Granger, who also serves as ALPHA AIR's sole manager, executive, and decision maker.

16.    Granger was the person who actually decided to misclassify Mr. Shaw and Mr. Oquendo.

17.    Granger was the person who actually decided to not pay Mr. Shaw and Mr. Oquendo the overtime wages they were owed.

18.    Granger was the person who actually decided not to pay Mr. Shaw or Mr. Oquendo their wages due at the time they separated from employment.

19.    Granger, as the owner of ALPHA AIR, is the person ultimately responsible for not paying Mr. Shaw and Mr. Oquendo as alleged throughout this complaint.

20.    Upon information and belief, Granger failed to properly capitalize ALPHA AIR, which led to ALPHA AIR failing to pay co-plaintiffs the wages they were owed in this case, and upon further

information and belief Granger has not maintained any meaningful separation between himself and the business of ALPHA AIR.

21. Accordingly, and upon information and belief, Granger has used ALPHA AIR as his alter ego and as a purported liability shield to commit the various FLSA and Louisiana wage & hour violations alleged in this complaint.

22. Accordingly, Granger and ALPHA AIR are equally responsible for the FLSA and Louisiana wage & hour violations alleged in this complaint because, upon information and belief, Granger and ALPHA AIR are merely alter-egos of each other.

23. In approximately January 2022, ALPHA AIR hired Mr. Shaw as a full-time "Service Professional."

24. In approximately January 2022, ALPHA AIR hired Mr. Oquendo as a full-time "Installer."

25. As alleged throughout this complaint, Granger and ALPHA AIR purposefully misclassified Mr. Shaw and Mr. Oquendo as independent contractors to avoid defendants' obligations to them under the Fair Labor Standards Act and Louisiana wage and hour laws (as more particularly set out later in this complaint).

26. Throughout their entire employment with ALPHA AIR, Mr. Shaw and Mr. Oquendo were engaged in commerce or the production of goods for commerce by regularly performing, for instance, the following acts as instructed by ALPHA AIR and Derek Granger for the benefit of the company:

　　(a) Regularly purchasing technical parts, tools, and materials from interstate companies in person, over the phone, and via the Internet from out-of-state or interstate merchants, having the products shipped to Louisiana, and using these interstate or out-of-state sourced parts, tools, and materials to complete their work;

(b) Regularly traveling within Louisiana on the Eisenhower National System of Interstate and Defense Highways to pick up technical parts, tools, and materials that, upon information and belief, were assembled from outside of Louisiana, shipped to Louisiana, and ultimately purchased from Louisiana vendors in cities such as New Orleans or elsewhere, and then using these interstate or out-of-state sourced parts, tools, and materials to complete their work; and

(c) Regularly using technical parts, tools, and materials purchased out-of-state or, upon information and belief, assembled out of state and shipped to Louisiana and purchased from Louisiana vendors, and otherwise performing manual labor to install or service air conditioning and heating systems.

27. At all times, Granger and ALPHA AIR exclusively controlled all aspects of Mr. Shaw and Mr. Oquendo's employment, including how they performed their job, when they performed their job, what they used to perform their job, where they performed their job, and what jobs they were given to perform.

28. Mr. Shaw and Mr. Oquendo had no meaningful opportunity for loss at their job because they had no meaningful capital or finances invested in the job or company.

29. Mr. Shaw and Mr. Oquendo's opportunity for profit was exclusively controlled by Granger and ALPHA AIR because defendants controlled how many hours Mr. Shaw and Mr. Oquendo worked, when, and where.

30. At the time of his hire, Mr. Shaw had no prior experience or education regarding selling, installing, or servicing air conditioning or heating systems, and Granger and ALPHA AIR were aware of Mr. Shaw's inexperience at the time they hired him as a service professional.

31. At no time were Mr. Shaw and Mr. Oquendo allowed to exercise discretion or independent

decision-making regarding their work or how they performed such work on behalf of Granger and ALPHA AIR.

32. At all times, Mr. Shaw and Mr. Oquendo performed work purely for the interest of their employer, Granger and ALPHA AIR.

33. At all times, the objective economic reality of Mr. Shaw and Mr. Oquendo's relationship to Granger and ALPHA AIR was that of employees, as Mr. Shaw and Mr. Oquendo were each entirely economically dependent upon ALPHA AIR and were not "independent contractors" in business for themselves.

34. Accordingly, at all times, Mr. Shaw and Mr. Oquendo were entitled to overtime wages for all hours they worked in a week greater than forty, except that Granger and ALPHA AIR purposefully misclassified Mr. Shaw and Mr. Oquendo as "independent contractors" and purposefully failed to pay them overtime wages under the FLSA.

**B.  Mr. Shaw's Unpaid Wages**

35. At all times relevant to this matter, Mr. Shaw was paid $20.00 per hour by ALPHA AIR with the understanding that he would also earn commissions on sales and service calls.

36. Defendants always paid Mr. Shaw on an hourly basis and never on a salary basis.

37. Defendants paid Mr. Shaw on a weekly basis.

38. Defendants always paid Mr. Shaw based on how many hours he worked during the week.

39. Defendants paid (or agreed to pay) Mr. Shaw his regular rate for every hour he worked, but defendants failed to pay Mr. Shaw time-and-a-half for the overtime hours he worked each week (in other words, for each hour more than 40 worked in a week).

40. To the best of his recollection and belief, during every week he was employed by Granger. and ALPHA AIR, Mr. Shaw worked an average of 55 hours a week.

41. To the best of his recollection, Mr. Shaw never worked less than 50 hours a week and often worked closer to 60 hours a week.

42. Mr. Shaw was continuously employed by Granger and ALPHA AIR until he resigned on approximately September 11, 2022.

43. Mr. Shaw was forced to resign because Granger and Alpha Air consistently failed to pay him even the full, regular wages he was owed.

44. At all times, Mr. Shaw was required to track his work time using an app named "HouseCall Pro" and Mr. Shaw did so.

45. Granger and Alpha Air also promised Mr. Shaw a certain percentage of his HVAC sales as earned commissions, but defendants never actually paid Mr. Shaw the commissions he earned.

46. Granger and ALPHA AIR never paid Mr. Shaw any of the overtime wages he was owed.

47. Granger and ALPHA Air failed to pay Mr. Shaw all the regular wages he was owed at the time of his resignation.

48. At the time of his resignation, to the best of his recollection and estimate, Granger and ALPHA AIR owed Mr. Shaw approximately **$3,500.00** in unpaid regular wages

49. At the time of his resignation, to the best of his recollection and estimate, Granger and ALPHA AIR owed Mr. Shaw approximately **$2,500.00** in earned but unpaid sales commissions.

50. At the time of his resignation, to the best of his recollection and estimate, Granger and ALPHA AIR owed Mr. Shaw approximately **$4,950.00** in unpaid overtime wages for approximately 495 hours of overtime work (calculated by multiplying 495 hours of overtime work by $10.00 per hour, which was the unpaid portion of Mr. Shaw's time-and-a-half rate of $30.00 per hour).

51. After Mr. Shaw resigned, Granger and ALPHA AIR refused to pay Mr. Shaw the

approximately $3,500 in regular wages and $2,500 in earned commission he was owed.

52. Prior to and after his resignation, Mr. Shaw has demanded payment of his earned and owed wages from ALPHA AIR and Derek Granger in writing, in person, and orally over the phone.

53. However, to date, Granger and ALPHA AIR have refused to pay Mr. Shaw the wages he is owed.

**C.    Daniel Oquendo's Unpaid Wages**

54. At all times relevant to this matter, Mr. Oquendo was paid $25.00 per hour by ALPHA AIR.

55. Defendants always paid Mr. Oquendo on an hourly basis and never on a salary basis.

56. Defendants paid Mr. Oquendo on a weekly basis.

57. Defendants always paid Mr. Oquendo based on how many hours he worked during the week.

58. Defendants paid (or agreed to pay) Mr. Oquendo his regular rate for every hour he worked, but defendants failed to pay Mr. Oquendo time-and-a-half for the overtime hours he worked each week (in other words, for each hour more than 40 worked in a week).

59. To the best of his recollection and belief, during every week he was employed by Granger. and ALPHA AIR, Mr. Oquendo worked an average of 55 hours a week.

60. To the best of his recollection, Mr. Oquendo never worked less than 50 hours a week and often worked closer to 60 hours a week.

61. Mr. Oquendo was continuously employed by Granger and ALPHA AIR until he resigned in approximately June of 2022.

62. Mr. Oquendo was forced to resign because Granger and Alpha Air consistently failed to pay him even the full, regular wages he was owed.

63. At all times, Mr. Oquendo was required to track his work time using an app named "HouseCall Pro" and Mr. Oquendo did so.

64. Granger and ALPHA AIR never paid Mr. Oquendo any of the overtime wages he was owed.

65. Granger and ALPHA Air failed to pay Mr. Oquendo all the regular wages he was owed at the time of his resignation.

66. At the time of his resignation, to the best of his recollection and estimate, Granger and ALPHA AIR owed Mr. Oquendo approximately **$2,000.00** in unpaid regular wages

67. At the time of his resignation, to the best of his recollection and estimate, Granger and ALPHA AIR owed Mr. Oquendo approximately **$3,750.00** in unpaid overtime wages for approximately 300 hours of overtime work (calculated by multiplying 300 hours of overtime work by $12.75 per hour, which was the unpaid portion of Mr. Shaw's time-and-a-half rate of $37.50 per hour).

68. After Mr. Oquendo resigned, Granger and ALPHA AIR refused to pay Mr. Oquendo the approximately $2,000 in regular wages he was owed.

69. Prior to and after his resignation, Mr. Oquendo has demanded payment of his earned and owed wages from ALPHA AIR and Derek Granger in writing, in person, and orally over the phone.

70. However, to date, Granger and ALPHA AIR have refused to pay Mr. Oquendo the wages he is owed.

**D.    Granger and ALPHA AIR Have No Good-Faith Basis for Their Misclassification and Failure to Pay Required Minimum and Overtime Wages under the FLSA**

71. Upon information and belief, and at all relevant times in this matter, Granger and ALPHA AIR knew that Mr. Shaw and Mr. Oquendo were not exempt under the FLSA's overtime wage provisions, yet Granger and ALPHA AIR continued to misclassify the co-plaintiffs as

"independent contractors" and refused to pay them overtime wages.

72. Upon information and belief, Granger and ALPHA AIR have no good-faith basis for believing Mr. Shaw and Mr. Oquendo were exempt under the FLSA's minimum and or for failing to pay them overtime wages or their final paychecks.

## CAUSES OF ACTION

**A. Unlawful Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act against Alpha Air Heating & Air Conditioning LLC and Derek Granger**

73. Mr. Shaw and Mr. Oquendo each state a cause of action for unlawful failure to pay overtime wages against Alpha Air Heating & Air Conditioning LLC and Derek Granger under the Fair Labor Standards Act.

74. Under the Fair Labor Standards Act, a covered employer is required to pay an hourly employee overtime wages at the rate of 1.5 times the employee's regular rate of pay for each hour over 40 worked in a weekly pay period. 29 U.S.C. § 207(a) *et seq.* An employer who fails to pay an employee 1.5 times his regular rate of pay for each overtime hour worked owes the employee the lost value of these unpaid wages, doubled as liquidated damages unless the employer proves it acted in good faith. *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b) (regarding overtime wages specifically). A prevailing employee is also entitled to his reasonable attorney's fees. *Id.* at 502.

75. In this matter, ALPHA AIR is a covered employer under so-called "enterprise coverage" because, upon information and belief, ALPHA AIR has or will have taken in more than $500,000 in gross revenue in 2022. In the alternative, Mr. Shaw and Mr. Oquendo are individually "covered employees" because they had "regular contact with [interstate] commerce, no matter how small[.]" *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007). Throughout their entire employment with ALPHA AIR, Mr. Shaw and Mr. Oquendo were engaged in commerce or

10

the production of goods for commerce by regularly performing, for instance, the following acts as instructed by ALPHA AIR and Derek Granger for the benefit of the company: (a) regularly purchasing technical parts, tools, and materials from interstate companies in person, over the phone, and via the Internet from out-of-state or interstate merchants, having the products shipped to Louisiana, and using these interstate or out-of-state sourced parts, tools, and materials to complete their work; (b) regularly traveling within Louisiana on the Eisenhower National System of Interstate and Defense Highways to pick up technical parts, tools, and materials that, upon information and belief, were assembled from outside of Louisiana, shipped to Louisiana, and ultimately purchased from Louisiana vendors in cities such as New Orleans or elsewhere, and then using these interstate or out-of-state sourced parts, tools, and materials to complete their work; and (c) regularly using technical parts, tools, and materials purchased out-of-state or, upon information and belief, assembled out of state and shipped to Louisiana and purchased from Louisiana vendors, and otherwise performing manual labor to install or service air conditioning and heating systems.

76. To determine whether a worker is an employee protected under the FLSA versus an "independent contractor," the focus is on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir. 2008). Whether the employer or employee subjectively believes that the worker is an independent contractor and not an employee is irrelevant because "[s]ubjective beliefs cannot transmogrify objective economic realities. A person's subjective opinion that he is a businessman rather than an employee does not change his status." *Id*. at 346. Instead, to determine whether a worker is economically dependent on the employer, the court considers "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the

worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id*. at 343.

77. In this case, as alleged, Derek Granger and ALPHA AIR employed Mr. Shaw and Mr. Oquendo as bona fide employees, despite the fact that Granger and ALPHA AIR purposefully misclassified Mr. Shaw and Mr. Oquendo as independent contractors to avoid the various obligations under the FLSA attendant with the employment of, rather than the contracting with, workers. Specifically, defendants utilized Mr. Shaw and Mr. Oquendo as laborers; defendants did not assign any significant discretionary, administrative, or professional job duties to Mr. Shaw and Mr. Oquendo; to the extent either co-plaintiff ever exercised any administrative, professional, sales, or supervisory work, that work was insignificant compared to co-plaintiff's primary responsibilities of manually installing, repairing, and servicing HVAC systems; defendants controlled the amount of hours Mr. Shaw and Mr. Oquendo worked; defendants unilaterally set Mr. Shaw and Mr. Oquendo's pay; defendants did not attempt to confect any written or verbal independent contractor agreement with Mr. Shaw and Mr. Oquendo; Mr. Shaw and Mr. Oquendo had to keep time using a phone application and were only paid based on the time they worked; Mr. Shaw and Mr. Oquendo had no material investment or risk in ALPHA AIR; and Mr. Shaw and Mr. Oquendo were completely economically dependent on defendants to earn their livelihoods. In all respects, Mr. Shaw and Mr. Oquendo were non-exempt employees of Granger and ALPHA AIR.

78. Accordingly, ALPHA AIR and Derek Granger owe Mr. Shaw and Mr. Oquendo unpaid overtime pay for the weeks in which they worked an excess of 40 hours, at a rate of 1.5 times their regular rate of pay.

79. Upon information and belief, Mr. Shaw and Mr. Oquendo regularly worked an average of

55 hours per week in each week they were employed by Granger and ALPHA AIR.

80. Accordingly, Granger and ALPHA AIR are liable to pay Mr. Shaw his unpaid overtime wages, totaling an approximate minimum of **$4,950.00**, plus liquidated damages equal to the amount of unpaid overtime wages, for total minimum damages under FLSA overtime provisions totaling **$9,900.00**. Defendants are also liable to pay Mr. Shaw's reasonable attorney's fees and costs incurred in this matter.

81. Accordingly, Granger and ALPHA AIR are also liable to pay Mr. Oquendo his unpaid overtime wages, totaling an approximate minimum of **$3,750.00**, plus liquidated damages equal to the amount of unpaid overtime wages, for total damages under FLSA overtime provisions totaling **$7,500.00**. Defendants are also liable to pay Mr. Oquendo's reasonable attorney's fees and costs incurred in this matter.

**B.     Unlawful Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act against Alpha Air Heating & Air Conditioning LLC and Derek Granger**

82. Mr. Shaw and Mr. Oquendo state a cause of action for unlawful failure to pay minimum wages against Alpha Air Heating & Air Conditioning LLC and Derek Granger under the Fair Labor Standards Act.

83. Plaintiffs incorporate herein all prior allegations of this complaint.

84. Additionally, under the Fair Labor Standards Act, "[e]very employer shall pay to each of his employees . . . not less than . . . $7.25 an hour . . . ." 29 U.S.C. § 206(a)(1).

85. Mr. Shaw and Mr. Oquendo worked approximately 110 hours in the last two weeks leading up to their respective resignations in constructive discharge.

86. Upon information and belief, ALPHA AIR and Granger failed to pay Mr. Shaw and Mr. Oquendo any wages at all for the 80 regular hours of work they performed during this time.

87. At the minimum rate of $7.25 per hour, upon information and belief, Granger and ALPHA

AIR owe Mr. Shaw at least an additional, approximate **$580.00** in unpaid regular wages, plus liquidated damages equal to the amount of unpaid minimum wages, for total damages under FLSA minimum wage provisions totaling **$1,160.00**. Defendants are also liable to pay Mr. Shaw's reasonable attorney's fees and costs incurred in this matter.

88. Similarly, at the minimum rate of $7.25 per hour, upon information and belief, Granger and ALPHA AIR owe Mr. Oquendo at least an additional, approximate **$580.00** in unpaid regular wages, plus liquidated damages equal to the amount of unpaid minimum wages, for total damages under FLSA minimum wage provisions totaling **$1,160.00**. Defendants are also liable to pay Mr. Oquendo's reasonable attorney's fees and costs incurred in this matter.

**C.    Unlawful Failure to Pay Owed Wages under Louisiana Revised Statute § 23:631 against Alpha Air Heating & Air Conditioning LLC and Derek Granger**

89. Mr. Shaw and Mr. Oquendo state a cause of action against Alpha Air Heating & Air Conditioning LLC and Derek Granger for their earned but unpaid wages and commissions pursuant to Louisiana Wage Payment Act codified at La. Rev. Stat. Ann. § 23:631 *et seq*.

90. Under La. Rev. Stat. Ann. § 23:631 employers are strictly liable to pay an employee's last paycheck at most 15 days after the separation of their employment for any reason: "Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."

91. Under La. Rev. Stat. Ann. § 23:632: "any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for

14

payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages."

92. In Louisiana, earned commissions are considered wages under the Louisiana Wage Payment Act. *Mipro v. Lycee Francais de La Nouvelle-Orleans, Inc.,* 2013-1604 (La.App. 4 Cir. 7/2/14); 146 So.3d 650, writ denied sub nom. *Mipro v. Lycee Francais de la Nouvelle-Orleans, Inc.,* 2014-1652 (La. 10/31/14); 152 So.3d 157; *and also Jeansonne v. Schmolke,* 2009-1467, p. 14 (La. App. 4 Cir. 5/19/10); 40 So.3d 347, 359 (so holding).

93. As alleged throughout this complaint, ALPHA AIR and Granger employed Mr. Shaw and Mr. Oquendo as bona fide employees.

94. At the time of his resignation in constructive discharge, Mr. Shaw was owed a minimum of **$3,500.00** in regular wages as well as approximately **$2,500.00** in earned but unpaid commissions, for a total of **$6,000.00** of unpaid wages, under the Louisiana Wage Payment Act.

95. At the time of his resignation in constructive discharge, Mr. Oquendo was owed a minimum of **$2,000.00** in regular wages under the Louisiana Wage Payment Act.

96. As alleged throughout this complaint, Mr. Shaw and Mr. Oquendo have both made demands for payment of their respective, unpaid wages.

97. Nevertheless, to date, Granger and ALPHA AIR have failed to pay Mr. Shaw and Mr. Oquendo the wages owed to them.

98. Mr. Shaw first demanded payment of his wages on or about September 10, 2022 (the day before his resignation), and Mr. Shaw has continued to demand payment of his wages since then. To date, at least 33 days have passed from the date of Mr. Shaw's first demand. Mr. Shaw's daily rate of pay equals approximately $200 (based on an average, 11-hour work day, multiplied by his

regular rate of $20.00 per hour). Accordingly, Granger and ALPHA AIR owe Mr. Shaw penalty wages of **$7,260.00** and counting.

99. Mr. Oquendo first demanded payment of his shortly after his resignation in approximately June 2022, and Mr. Oquendo has continued to demand payment of his wages since then. To date, more than 90 days have passed from the date of Mr. Oquendo's first demand. Mr. Oquendo's daily rate of pay equals approximately $275 (based on an average, 11-hour work day, multiplied by his regular rate of $25.00 per hour). Accordingly, Granger and ALPHA AIR owe Mr. Oquendo penalty wages of **$24,750.00**.

## RESERVATION OF AMENDMENT

Mr. Shaw and Mr. Oquendo reserve the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Mr. Shaw and Mr. Oquendo request a trial by jury on all claims and causes of action asserted and triable by jury in this matter.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Mark A. Shaw and Daniel M. Oquendo pray that their complaint be deemed good and sufficient; that it and summons be served upon defendants Alpha Air Heating & Air Conditioning LLC and Derek Granger; and, after due proceedings are had, that judgment be entered in favor of plaintiffs and against defendants providing the following relief:

1. The entry of a declaratory judgment against defendants declaring that the practices complained of in this complaint are unlawful under the FLSA and the Louisiana Wage Payment Act, and that defendants willfully violated the rights of the plaintiffs under the FLSA and the Louisiana Wage Payment Act;

2.     Awarding **Mr. Shaw** the following against all defendants:

    (a)     **$4,950.00** in unpaid overtime wages under the FLSA;

    (b)     **$4,950.00** in liquidated overtime-wage damages under the FLSA;

    (c)     **$580.00** in unpaid minimum wages under the FLSA;

    (d)     **$580.00** in liquidated minimum-wage damages under the FLSA;

    (e)     **$6,000.00** in unpaid wages and commissions under the Louisiana Wage Payment Act;

    (f)     Up to 90 days' worth of penalty wages under the LWPA, presently worth **$7,260** as of the time this complaint was filed;

    (g)     The value of any negative tax consequence paid or owed by Mr. Shaw associated with these payments;

    (h)     Any judicial interest owed as a matter of law; and,

    (i)     Mr. Shaw's reasonable attorney's fees and costs incurred in this matter.

3.     Awarding **Mr. Oquendo** the following against all defendants:

    (a)     **$3,750.00** in unpaid overtime wages under the FLSA;

    (b)     **$3,750.00** in liquidated overtime-wage damages under the FLSA;

    (c)     **$580.00** in unpaid minimum wages under the FLSA;

    (d)     **$580.00** in liquidated minimum-wage damages under the FLSA;

    (e)     **$2,000.00** in unpaid wages under the Louisiana Wage Payment Act;

    (f)     90 days' worth of penalty wages under the LWPA, worth **$24,750.00**;

    (g)     The value of any negative tax consequence paid or owed by Mr. Shaw associated with these payments;

    (h)     Any judicial interest owed as a matter of law; and,

    (i)     Mr. Oquendo's reasonable attorney's fees and costs incurred in this matter.

4. An award for all other legal and equitable relief to which plaintiffs are entitled.

                    Respectfully submitted:

                    /s/ Kevin S. Vogeltanz
                    Kevin S. Vogeltanz, TA (Bar #32746)
                    The Law Office of Kevin S. Vogeltanz, LLC
                    823 Carroll Street, Suite A
                    Mandeville, LA 70448
                    Telephone: (504) 275-5149
                    Facsimile: (504) 910-1704
                    Email: vogeltanz@gmail.com

                    *Attorney for plaintiffs Mark A. Shaw & Daniel M. Oquendo*