UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARK SHAW, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                               **NO. 22-3953**

**ALPHA AIR HEATING & AIR**                              **SECTION: D (4)**
**CONDITIONING LLC, ET AL.**

### ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiffs Mark Shaw and Daniel Oquendo.[1] The Defendants, Alpha Air Heating & Air Conditioning, LLC and Derek Granger, did not file a response to the Motion. Accordingly, the Motion is unopposed. After careful consideration of the Plaintiffs' memorandum, the record, and the applicable law, the Court **GRANTS** the Plaintiffs' Motion for Partial Summary Judgment.

### I. FACTUAL BACKGROUND

Plaintiffs Mark Shaw and Daniel Oquendo ("Plaintiffs") filed this Fair Labor Standards Act ("FLSA") action against their former employers, Alpha Air Heating & Air Conditioning LLC ("Alpha Air") and Derek Granger ("Granger") to recover alleged unpaid wages, including unpaid overtime wages.[2] In their Verified Complaint filed in this Court on October 17, 2022, the Plaintiffs assert an FLSA claim for failure to pay overtime wages, an FLSA claim for failure to pay minimum wage, and a

---

[1] R. Doc. 16.
[2] R. Doc. 1.

Louisiana Wage Payment Act ("LWPA") claim for failure to pay wages and commissions within fifteen days after an employee's separation from their employer.[3]

According to the Verified Complaint, Alpha Air—a residential heating, air conditioning, and ventilation installer and service provider in southeast Louisiana—hired Plaintiffs Shaw and Oquendo in January 2022 as a full time "Service Professional" and "Installer," respectively.[4] Plaintiffs allege that Derek Granger, Alpha Air's owner and sole member, controlled all aspects of their employment including which jobs they performed, how they performed their jobs, and where they performed their jobs.[5]

The Verified Complaint alleges that at all times the Plaintiffs were paid on an hourly wage basis and that they never received any overtime payment.[6] Specifically, Shaw alleges that he was paid $20 per hour on a weekly basis and despite working an average of 55 hours per week, was never paid any overtime.[7] According to Shaw, the Defendants not only failed to pay him overtime wages but they also failed to pay him certain regular wages he was owed as well as earned commissions.[8] Shaw alleges that the Defendants owe him $3,500.00 in unpaid regular wages, $2,500.00 in unpaid commissions, and $4950.00 in unpaid overtime wages.[9] Shaw resigned from Alpha Air on September 11, 2022.[10] As for Oquendo, the Verified Complaint states that he

---

[3] *Id.*
[4] *Id.* at ¶¶ 14, 23–24.
[5] *Id.* at ¶ 27.
[6] *Id.* at ¶¶ 36, 46, 55, 64.
[7] *Id.* at ¶¶ 39–40.
[8] *Id.* at ¶¶ 43, 45–46.
[9] *Id.* at ¶¶ 48–50.
[10] *Id.* at ¶ 42.

was paid $25 per hour on a weekly basis by the Defendants and that he too worked an average of 55 hours per week.[11] Like Shaw, Oquendo alleges that the Defendants failed to pay him certain regular wages and failed to pay overtime wages.[12] Oquendo estimates that the Defendants failed to pay $2,000.00 in regular wages and $3,750.00 in overtime wages.[13] Oquendo resigned from Alpha Air in June 2022.[14]

In the instant Motion for Partial Summary Judgment, the Plaintiffs ask the Court to decide the following issues of law in Plaintiffs' favor: (1) whether the Plaintiffs were employees of the Defendants; whether the Plaintiffs' work was covered by the FLSA; (3) whether the plaintiffs were exempt from the FLSA's overtime rules; and (4) whether the Defendants have a good faith affirmative defense against liquidated damages.[15] The Plaintiffs argue that the undisputed facts demonstrate that the Plaintiffs were Defendants' employees, not contractors, that their work was covered by the FLSA and that they did not meet any of the FLSA's exceptions, and that the Defendants have no good faith defense. The Defendants did not file a response to the Motion.[16]

## II.  LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the

---

[11] *Id.* at ¶¶ 58–59.
[12] *Id.* at ¶¶ 62, 64–65.
[13] *Id.* at ¶¶ 66–67.
[14] *Id.* at ¶ 61.
[15] R. Doc. 16.
[16] Following a telephone status conference, the Court granted the Defendants' request to continue the submission date for the instant Motion to October 3, 2023. *See* R. Doc. 21 at p. 3. Nevertheless, as of the date of this Order, no opposition to the Motion has been filed.

movant is entitled to judgment as a matter of law."[17] A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[18] Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[19] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[20] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[21] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[22]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[23] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the

---

[17] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[18] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[19] *Liberty Lobby*, 477 U.S. at 248.
[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[21] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[22] *Id.* at 399 (citing *Liberty Lobby*, 477 U.S. at 248).
[23] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

reasonable fact-finder to return a verdict in favor of the moving party."[24] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[25] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[26]

Finally, a party moving for summary judgment is not entitled to have their motion granted simply because their motion is unopposed.[27] Rather, its burden remains the same as if the motion was opposed; the moving party must demonstrate that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law.[28] That being said, where a party fails to file a response to a summary judgment motion, the Court may accept as undisputed all of the facts listed in the moving party's statement of undisputed material facts.[29]

## III. ANALYSIS

In the instant Motion, the Plaintiffs ask the Court to determine that (1) the Plaintiffs were employees of the Defendants; (2) the Plaintiffs' work was covered

---

[24] *Id.* at 1265.
[25] *See Celotex*, 477 U.S. at 322–23.
[26] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[27] *Homelife in the Gardens, LLC v. Landry*, 2018 WL 341703, at *2 (E.D. La. Jan. 9, 2018) (quoting *Day v. Wells Fargo Bank N.A.*, 768 F.3d 435, 435 (5th Cir. 2014) (per curiam)).
[28] *Id.*; *see also* Fed. R. Civ. P. 56.
[29] *See Lamelas v. Abud*, No. CV 22-739, 2023 WL 3340851, at *1 (E.D. La. May 10, 2023) (quoting *Gonzales v. Abdurasulov*, No. 3:22-cv-00654, 2022 WL 2717633, at *1 (W.D. La. July 13, 2022)); *see also* Local Rule 56.1.

under the FLSA; (3) the Plaintiff's did not fall under an FLSA exemption; and (4) the Defendants have no good faith defense against liquidated damages. For the foregoing reasons, the Court answers each question in the affirmative and grants the Plaintiffs' Motion.

## A. The Plaintiffs Are Employees of the Defendants

The Fifth Circuit has held that "the ultimate conclusion that an individual is an 'employee' within the meaning of the [Fair Labor Standards Act] is a legal determination rather than a factual one."[30] Because the material facts here are not in dispute, this issue is ripe for summary judgment. Applying the "economic realities" test enunciated by the Fifth Circuit, the Court determines that the Plaintiffs were employees of the Defendants.

The FLSA broadly defines "employee" as "any individual employed by an employer."[31] An "employer," in turn, includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."[32] The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"[33] An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer.[34] The factors considered under the "economic reality" test include: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the

---

[30] *See Lindsley v. BellSouth Telecomms. Inc.,* 401 Fed. App. 944, 945 (5th Cir. 2010) (citing *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir. 1987)).
[31] 29 U.S.C. § 203(e)(1).
[32] *Id.* § 203(d).
[33] *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (quoting 29 U.S.C. § 203(g)).
[34] *See Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961).

degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[35] The crux of this "fact-intensive inquiry"[36] is whether the worker is "economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself."[37]  Importantly, the labels the parties assign to the relationship are not dispositive of the inquiry.[38] That said, explicit contractual arrangements may be evidence of an employer-employee relationship or lack thereof.[39]

The Court first considers the degree of control the Defendants exercised over the Plaintiffs. The Plaintiffs argue that they had no meaningful control over their work and that the Defendants had supervisory control over them. In support of this assertion, the Plaintiffs state that Granger, as the "sole owner, manager, and decision-maker" of Alpha Air, dictated when the Plaintiffs worked, where the Plaintiffs worked, and how the Plaintiffs went about their work.[40] The Plaintiffs contend that Granger required the Plaintiffs to report to Alpha Air's Metairie storefront every morning to receive their work for that day and controlled and allocated the jobsites that the Plaintiffs worked at.[41] Further, the Plaintiffs were

---

[35] *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993); *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976).
[36] *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 755 (S.D. Tex. 2019).
[37] *Darden*, 503 U.S. at 326.
[38] *See Watson v. Graves*, 909 F.2d 1549, 1554 (5th Cir. 1990) ("We must . . . look to the substantive realities of the relationship, not to mere forms or labels ascribed to the laborer by those who would avoid coverage.").
[39] *Robicheaux v. Radcliff Mat'l*, 697 F.2d 662, 667 (5th Cir. 1983).
[40] *See* R. Doc. 16-1, at pp. 2–4.
[41] *See id.* at p. 3; R. Doc. 16-2, Declaration of Mark A. Shaw ("*Shaw Decl.*"), at ¶ 9; R. Doc. 16-3, Declaration of Daniel M. Oquendo ("*Oquendo Decl.*"), at ¶ 9.

required to perform their work in a manner controlled and supervised by Granger.[42] Thus, the Court concludes that because the Defendants exercised a significant amount of control over the Plaintiffs' work, the first factor weighs in favor of finding the Plaintiffs to be employees.

Next, the Court considers the extent of any investments made by the Plaintiffs and the Defendants. Here, the Plaintiffs individually purchased various tools for their work including drills, pliers, torches, and gauges.[43] In comparison, the Defendants supplied the Plaintiffs with all other equipment and materials, including the HVAC systems to be installed or repaired, company trucks to drive to and from each work site, and uniforms.[44] Each Plaintiff has declared that "Granger provided all the equipment and materials I installed or replaced on the HVAC systems I was working on."[45] The Plaintiffs assert that the tools they purchased constituted a minor investment compared to everything else that the Defendants supplied.[46] The Court agrees. While the Plaintiffs did individually invest in the HVAC work by purchasing tools for on-the-job use, such an investment does not compare to the amount of investment contributed by Defendants. Further, any minimal investment by the Plaintiffs was at the direction of Defendants.[47] Therefore, the Court concludes that the second factor weighs in favor of employee status.

---

[42] *See* R. Doc. 16-1 at p. 4.
[43] *See id.* at p. 5; R. Doc. 16-2, *Shaw Decl.*, at ¶ 8; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 8.
[44] *See* R. Doc. 16-1 at pp. 5–6; R. Doc. 16-2, *Shaw Decl.*, at ¶ 8; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 8.
[45] *See* R. Doc. 16-2, *Shaw Decl.*, at ¶ 8; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 8.
[46] R. Doc. 16-1 at p. 6.
[47] *Id.*

Turning to the third factor, the Court finds that the degree of control the Defendants had over the Plaintiffs' opportunity for profit or loss points toward the Plaintiffs' classification as employees. In general, a greater degree of control that a worker has over his opportunity for profit or loss is indicative of independent contractor status.[48] The Fifth Circuit has looked to whether "the putative employer's control over the worker's schedule and pay had the effect of limiting the worker's opportunity . . . for profit or loss."[49] Here, the Plaintiffs assert that they had "no ability to increase or decrease their profits" because the Defendants assigned jobs to the Plaintiffs and controlled when and how often the Plaintiffs could work; the Plaintiffs had no ability to seek more work independently or work hours outside those assigned by the Defendants.[50] Further, the Plaintiffs were paid an hourly wage, not on a per-project basis, and did not receive bonuses based on the number of jobs completed.[51] The Plaintiffs argue, therefore, that there was no opportunity to control their own profit because the Defendants had total control over wages and hours worked.[52] As the Plaintiffs point out, "[w]hether [Plaintiffs] were the fastest and most clever workers, or the least, [Defendants] paid them the same amount per hour of work."[53] The Court finds that the Plaintiffs did not have an opportunity for profit or loss because they were paid hourly and because the Defendants had control over the

---

[48] *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 384 (5th Cir. 2019).
[49] *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 832 (5th Cir. 2020) (citing *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. App. 57, 61 (5th Cir. 2009).
[50] *See* R. Doc. 16-1 at p. 6; R. Doc. 16-2, *Shaw Decl.*, at ¶ 9; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 9.
[51] *See* R. Doc. 16-1 at p. 6; R. Doc. 16-2, *Shaw Decl.*, at ¶ 9; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 9.
[52] *See* R. Doc. 16-1 at p. 6.
[53] *Id.*

number of hours worked. Therefore, the Court concludes that factor three weighs in favor of finding the Plaintiffs to be employees.

In analyzing the fourth factor, the Court considers the skill and initiative required of the Plaintiffs to do their work. A worker's "unique skill set" and initiative are typically indicative of independent-contractor status.[54] The Plaintiffs assert that Granger taught the Plaintiffs how to do their work on the job and that the work itself did not require special skills.[55] Indeed, Shaw declares that he had no relevant experience whatsoever in the HVAC industry prior to being hired by the Defendants.[56] Oquendo advises that he had only four months of experience.[57] Nothing in the record supports a finding that the Plaintiffs had any specialized skills that they brought to the Defendants' business or that the Plaintiffs exercised any significant initiative within the business. The Plaintiffs were inexperienced hires lacking any "specialized skills." Accordingly, this factor, too, weighs in favor of employee status.

Finally, the Court considers the permanency of the work relationship. Employee status is more likely to be found where an individual worker works exclusively for an entity on a permanent basis.[58] The Plaintiffs argue that they "did not sign on to work for [Defendants] for a specific time or for a set number of jobs," and that "their work was intended to be indefinite."[59] While neither Plaintiff worked

---

[54] *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 345 (5th Cir. 2008).
[55] R. Doc. 16-1 at p. 7; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 5.
[56] R. Doc. 16-2, *Shaw Decl.*, at ¶ 5.
[57] R. Doc. 16-3, *Oquendo Decl.*, at ¶ 5.
[58] *See Hopkins*, 545 F.3d at 345–46.
[59] R. Doc. 16-1 at p. 7.

for the Defendants longer than nine months, the record reflects that the Plaintiffs resigned due to wage disputes, not because their work or any project had concluded.[60] Moreover, an exact length of time is not required to establish permanency.[61] Because the work here was not on a "project-by-project basis"[62] and because the Plaintiffs were hired on an exclusive and permanent basis, the Court finds that this last factor also weighs in favor of employee status.

Although the above factors are non-exhaustive, the Defendants have provided no other relevant factor for the Court to consider. Because every factor falls in favor of employee status for the Plaintiffs, the Court finds that the Plaintiffs were Defendants' employees, not independent contractors. The Plaintiffs were "economically dependent on the business," and not "as a matter of economic reality, in business for [themselves]."[63]

## B.     The Plaintiffs are Covered Under the FLSA

In addition to the requirement that workers be considered employees, coverage under the FLSA requires that said employees either be "engaged in commerce," so-called "individual coverage," or "employed in an enterprise engaged in commerce" so-called "enterprise coverage."[64] "*Either* individual *or* enterprise coverage is enough to

---

[60] *See* R. Doc. 1 at ¶¶ 43, 62.  Attached to the Complaint in this case are declarations from both Plaintiffs verifying that the allegations contained within are true and accurate.  "On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."  *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).  Accordingly, the Court properly considers the allegations raised in the Plaintiffs' Complaint.
[61] *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 387 (5th Cir. 2019).
[62] *Id.*
[63] *Id.* at 379 (quoting *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)).
[64] 29 U.S.C. § 207(a)(1); *see also Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).

invoke FLSA protection."[65] To trigger individual coverage under the FLSA, the employee's work must have "regular contact with commerce, no matter how small," instead of a purely local activity.[66] Alternatively, enterprise coverage applies when an employer "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and the employer has gross annual sales of at least $500,000.[67]

The Plaintiffs argue that both the individual coverage and enterprise coverage standards are met because the Plaintiffs "had regular contact with commerce throughout their entire employment by [D]efendants," and because the Defendants "had gross sales of at least $500,000 while they each worked there during 2022."[68] The Plaintiffs installed and serviced heating and air conditioning systems around the New Orleans metro area.[69] Further, the Plaintiffs "picked up their HVAC equipment from local distributors and brought them to their jobsites."[70] Transporting equipment manufactured out-of-state to locations around the New Orleans metro area is work "directly and vitally related to the functioning of . . . interstate commerce," sufficient to establish individual and enterprise coverage.[71] Additionally, the Defendants do not dispute that Alpha Air had gross annual sales of at least $500,000 in 2022.[72]

---

[65] *Martin*, 955 F.2d at 1032.
[66] *Sobrinio v. Med. Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007).
[67] 29 U.S.C. § 203(s)(1)(A).
[68] R. Doc. 16-1 at p. 8; *see also* R. Doc. 16-7, Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts, at ¶ 3.
[69] *See* R. Doc. 16-2, *Shaw Decl.*, at ¶ 4; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 4.
[70] R. Doc. 16-1 at p. 8; *see also* R. Doc. 16-2, *Shaw Decl.*, at ¶ 6; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 6.
[71] *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960).
[72] R. Doc. 16-7 at ¶ 3.

Therefore, the Plaintiffs meet the standard for individual and enterprise coverage under the FLSA and are thus covered by the FLSA.

C. **The Plaintiffs Are Not Exempt From Overtime Pay Under the FLSA**

The FLSA details several types of employees who are exempt from receiving overtime pay, including "any employee employed in a bona fide executive, administrative, or professional capacity . . . ."[73] The executive, administrative, or professional exemption does not apply to "blue collar" employees who "gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training . . . ."[74] Additionally, "non-management employees in maintenance, construction, and similar occupations . . . are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act, and are not exempt under the regulations . . . no matter how highly paid they might be."[75]

The Plaintiffs assert that no exemption applies because they were paid on an hourly basis, not on a salaried basis, and further and because their work primarily comprised of manual labor inconsistent with the executive, administrative, or professional exemption.[76] The Court agrees. Here, the Plaintiffs were manual laborers whose work involved maintenance and installation of HVAC systems and who had little-to-no training prior to being hired by the Defendants.[77] Further, it is

---

[73] 29 U.S.C. § 213(a)(1).
[74] 29 C.F.R. § 541.3(a).
[75] *Id.*
[76] R. Doc. 16-1 at p. 9.
[77] *Id.* at p. 3; R. Doc. 16-7 at ¶ 11; R. Doc. 16-2, *Shaw Decl.*, at ¶ 5; R. Doc. 16-3, *Oquendo Decl.*, at ¶ 5.

uncontested that the Plaintiffs were paid on an hourly basis.  The Court finds that the Plaintiffs are not exempt from overtime wages under the FLSA.

### D.    Liquidated Damages

Under the FLSA, an employer who violates the overtime provisions is liable for an employee's "unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[78]  A district court can decline to award liquidated damages if the court finds that the employer acted in "good faith" and had "reasonable grounds" to believe that it acted in compliance with the FLSA.[79] An employer "faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA."[80]  A defendant cannot show that it acted in good faith where a jury finds that a defendant's violation of the FLSA was willful.[81]

The Plaintiffs contend that should a jury find that the Defendants violated the overtime provisions of the FLSA the Court should award liquidated damages to the Plaintiffs because the Defendants admit that they have no good faith defense.[82]  In their response to the Plaintiffs' interrogatories, the Defendants stated that they "are not claiming the good faith defense."[83]  Rule 56 allows for a party to cite to "interrogatory answers" to support a motion for summary judgment.[84]  Moreover, the Defendants have not disputed that they lack a good faith defense.  Accordingly, the

---

[78] 29 U.S.C. § 216(b).
[79] *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003).
[80] *Id.* (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).
[81] *Id.*
[82] *See* R. Doc. 16-1 at pp. 9–10.
[83] *See* R. Doc. 16-5 at p. 3.
[84] *See* Fed. R. Civ. P. 56(c)(1)(A).

Court finds that should the Defendants be found liable to the Plaintiffs on the Plaintiffs' FLSA claims, the Plaintiffs shall be entitled to liquidated damages under the FLSA.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment[85] is **GRANTED.**

New Orleans, Louisiana, November 16, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[85] R. Doc. 16.